**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: 856-795-9002
Facsimile: 856-795-9887

Counsel for Plaintiff
(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE F. THOMPSON d/b/a TOP FLOOR HOME IMPROVEMENTS, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ARKANSAS BEST CORPORATION, AVERITT EXPRESS, CON-WAY, INC., FEDEX CORPORATION, JEVIC TRANSPORTATION, INC., SUN CAPITAL PARTNERS IV, LLC, NEW ENGLAND MOTOR FREIGHT, INC., OLD DOMINION FREIGHT LINE, INC., R+L CARRIERS, INC., SAIA, INC., UNITED PARCEL SERVICE, INC. and YRC WORLDWIDE INC. <br><br> Defendants. | Civil No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Lawrence F. Thompson d/b/a Top Floor Home Improvements, on behalf of itself and all those similarly situated, brings this action for damages and injunctive relief under the antitrust laws of the United States against Defendants, and demands a jury trial. Plaintiff's allegations are made upon information and belief, except as to those based upon publicly

available information, and except those which pertain to Plaintiff itself, which are made upon personal knowledge.

## NATURE OF THE ACTION

1. From at least September 2003, and continuing through the present (the "Class Period"), Defendants conspired to fix "fuel surcharges" for less-than-truckload shipments ("LTL") in the United States. LTL is defined as the service of providing freight shipment, for carriage by truck, when the freight to be shipped by a customer is less than one truckload.

2. Plaintiff brings this action under Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of itself and a class of persons, defined in this Complaint who paid a fuel surcharge on LTL services from September 2003 through the present.

3. Defendants' price-fixing conspiracy has directly and proximately caused antitrust injury to Plaintiff in its business and property. As a direct and proximate result of the unlawful agreement and activity alleged herein, Plaintiff paid more for LTL shipping services than it otherwise would have paid.

4. Plaintiff commences this action against the Defendants named in this Complaint pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, for the injuries sustained by Plaintiff by reason of the violations alleged in this Complaint, and to obtain injunctive relief against Defendants and secure the prevention of further violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## DEFINITIONS

As used in this Complaint, the following terms have the following meanings:

5. "Class Period" means the period from September 2003 through the present.

2

6. "LTL" means less-than-truckload shipments, and means service for shipments wholly within North America and originating or terminating in the United States. LTL shipments nearly always weigh between 100 and 10,000 pounds. LTL service, as used in this Complaint, does not include shipments requiring at least one full truck, small package shipments, shipments of furniture and personal effects by persons moving from one house to another, intermodal shipments, and shipments for carriage by air, water, or train.

7. "Person" in addition to its natural meaning includes any individual, partnership, corporation, association, or other business or legal entity.

## PARTIES

8. Plaintiff Lawrence F. Thompson d/b/a Top Floor Home Improvements is a sole proprietorship with its principal place of business at 198 Thayer Street, Jamestown, New York 14701. Plaintiff purchased LTL services during the Class Period directly from one or more of the Defendants, in the course of doing so paid a collusively set and imposed fuel surcharge, and has suffered antitrust injury as a result.

9. Defendant Arkansas Best Corporation ("ABF") is a Delaware corporation with its principal place of business at 3801 Old Greenwood Road, Fort Smith, Arkansas 72903. ABF is a trucking conglomerate offering LTL services under a variety of business names and wholly-owned alter-ego subsidiaries, including ABF, ABF Freight System, ABF Freight System Canada, ABF Cartage, Land-Marine Cargo, and FreightValue, Inc. During the Class Period ABF provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

10. Defendant Averitt Express ("AE") is a Tennessee corporation with its principal place of business at Perimeter Place One, 1415 Neal Street, Cookeville, Tennessee 38502.

During the Class Period AE provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

11. Defendant Con-Way, Inc. ("CW") is a Delaware corporation with its principal place of business at 2855 Campus Drive, Suite 300, San Mateo, California 94403. CW provides LTL service, as well as truckload brokerage, airfreight forwarding, region asset based truckload service, transportation consulting, and assembly and distribution logistics programs for business-to-business supply cycle management. During the Class Period CW provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

12. Defendant FedEx Corporation ("FedEx") is a Delaware corporation with its principal place of business at 942 South Shady Grove Road, Memphis, Tennessee 38120. FedEx provides packaging, shipping, and freight services, including LTL services, and operates FedEx Kinkos, among other business lines. During the Class Period FedEx provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

13. Defendant Jevic Transportation, Inc. ("Jevic") is a New Jersey corporation with its principal place of business at 600-700 Creek Road, Delanco, New Jersey 08075. Jevic is a major regional LTL services provider focusing on the Northeastern United States. During the Class Period Jevic provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

14. Defendant Sun Capital Partners IV, LLC ("Sun") is a Delaware corporation with its principal place of business at 5200 Town Center Circle, Suite 470, Boca Raton, Florida 33486. Sun is a private equity fund that purchases companies in leveraged buyouts. Sun

4

purchased Defendant Jevic from Defendant Saia, Inc. on or about July 5, 2006, shares equitable ownership with Jevic, and as part of and subsequent to the leveraged buyout extracted so much equity from Jevic that Jevic currently does not have assets sufficient to pay the full claims of the Class. Sun is liable for the actions of Jevic as alleged in this Complaint.

15. Defendant New England Motor Freight, Inc. ("NEMF") is a New Jersey corporation with its principal place of business at 1-71 North Avenue East, Elizabeth, New Jersey 07201. NEMF is a regional LTL company, providing service in the Northeastern United States, Eastern Canada, and Puerto Rico. During the Class Period NEMF provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

16. Defendant Old Dominion Freight Line, Inc. ("ODFL") is a Virginia corporation with its principal place of business at at 500 Old Dominion Way, Thomasville, North Carolina 27360. ODFL that derives most of its business from LTL services. During the Class Period ODFL provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

17. Defendant R+L Carriers, Inc. ("RLC") is an Ohio corporation with its principal place of business at 600 Gillam Road, Wilmington, Ohio 45177. RLC has operations in 45 states, Canada, and Puerto Rico. RLC operates under its own name and under the names R+L Transfer, Gator Freightways, Greenwood Motor Lines, and Paramount Transportation. During the Class Period RLC provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

18. Defendant Saia, Inc. ("Saia") is a Delaware corporation with its principal place of business at 11465 Johns Creek Parkway, Suite 400, Duluth, Georgia 30097. During the

Class Period Saia provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

19. Defendant United Parcel Service, Inc. ("UPS") is a Delaware corporation with its principal place of business at 55 Glendale Parkway, NE, Atlanta, Georgia 30328. UPS is a package delivery, and supply chain management company. UPS entered the LTL market by acquiring the assets of Overnite Transportation Company, then one of the largest LTL companies operating in the United States. During the Class Period UPS provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

20. Defendant YRC Worldwide, Inc. ("YRC") is a Delaware corporation with its principal place of business at 10990 Roe Avenue, Overland Park, Kansas 66211. YRC provides LTL services and other freight services using its own name and several other brands. During the Class Period YRC provided LTL services and in the course of doing so charged the fuel surcharges which are the subject of this Complaint.

21. References made in this Complaint to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation, and individuals acting on the corporation's behalf.

## CO-CONSPIRATORS

22. Various persons not named as Defendants may have participated as co-conspirators in the violations alleged in this Complaint and may have performed acts and made statements in furtherance thereof.

6

23. Each Defendant acted as the agent or joint venturer of other Defendants, or otherwise acted for other Defendants, with respect to the acts, violations and common course of conduct alleged by Plaintiff.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 15, 26 and 28 U.S.C. §§ 1331, 1337.

25. This Court has personal jurisdiction over each of the Defendants because each Defendant transacted business in the United States, directly sold substantial quantities of LTL services throughout the United States as a whole, and/or was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business throughout the United States, including in this District.

26. Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, 26) and 28 U.S.C. § 1391, because during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this District.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of itself and the following Class:

> All persons or entities who purchased LTL services directly from Defendants or their unnamed co-conspirators and who paid a fuel surcharge on LTL services during the period from September 2003 through the present. Excluded from the Class are federal government entities, Defendants, their co-conspirators and their respective parent companies, subsidiaries, and affiliates.

28. The Class comprises entities throughout the United States, making individual joinder impractical.

7

29. Plaintiff believes Class Members number in the thousands, the exact number and identities presently being known only by Defendants.

30. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff's claims arise from Defendants' wrongful conduct, as alleged in this Complaint, and from Plaintiff's payment of fuel surcharges on LTL services and/or purchased LTL services directly from Defendants, as do the claims of all members of the Class.

31. There are questions of law and fact common to the Class, including but not limited to:

   a. Whether Defendants and their co-conspirators combined and conspired among themselves to fix, raise, maintain or stabilize fuel surcharges imposed for LTL services;

   b. The identity of participants in the conspiracy;

   c. Whether the alleged conspiracy violated Section 1 of the Sherman Act;

   d. The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

   e. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

   f. The effect of Defendants' conspiracy on the prices of LTL services sold in the United States during the Class Period; and

   g. The appropriate measure of damages sustained by Plaintiff and other members of the Class.

32. These common questions of law and fact, among others, predominate over any questions affecting only individual members.

33. Plaintiff will fairly and adequately represent and protect the interests of the Class, as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has retained counsel with substantial experience in the prosecution of nationwide class actions. Plaintiff and its

8

counsel are committed to the vigorous prosecution of this action on behalf of the Class. Neither Plaintiff nor its counsel has any interest adverse to those of the Class.

34. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3). The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. Absent a class action, most members of the Class would likely find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## FACTS

36. Plaintiff and Class Members utilize LTL services to transport freight on the ground within North America. Based on various articles in trucking industry trade journals, Plaintiff estimates that the total domestic LTL industry revenue ranged from $25 to $35 billion annually during the Class Period.

**A.    The Implementation and Maintenance of Horizontal Price-Fixing**

37. LTL services are a commodity product that are fungible in the sense that LTL services provided by any of the Defendants may be substituted for the LTL services provided by any other Defendant. In essence, LTL services are homogenous services sold by Defendants and purchased by Plaintiff and Class Members primarily on the basis of price.

9

38. Demand for LTL is inelastic. Accordingly, the gains from collusion are substantial.

39. The LTL service industry in the United States is highly concentrated, which facilitates coordination of prices. During the Class Period, Defendants possessed a combined United States market share exceeding 75%.

40. Barriers to entry are high. Entry into the LTL industry requires a considerable amount of time, resources, and industry knowledge. Practical entry into the industry is both expensive and risky, and requires several things, including the purchase or lease of hundreds of trucks and dozens of truck depots; the control of a significant market share from existing providers; the need for skilled truck drivers; and significant advertising expenses in order to build a recognizable brand name.

41. Furthermore, even for potential shipping experts who possess the capital and know how to enter the market, viable entry into the LTL market takes a considerable amount of time. When package shipping leaders FedEx and UPS decided to enter the LTL market, they purchased and rebranded already existing LTL companies rather than attempting to directly enter the market on their own.

42. Unlike some other industries, purchasers of LTL services cannot stock up on LTL services when prices are low, then use this stockpile when shipping prices are high.

43. Price is the most important competitive factor in LTL shipping. The standardized nature of LTL shipping services hampers substantial and material non-price competition.

44. The firms that make up the LTL industry have a similar cost structure. There is a high ratio of fixed to variable costs. Capital equipment, software, advertising, depot purchase

or lease, driver recruitment and training, and other capital costs are high relative to variable costs. None of the Defendants are significantly more efficient than the industry average.

45. The LTL industry is a mature industry, and is therefore characterized by slim profit margins, creating a motivation to collude.

46. The LTL industry has a history of cooperation. For example, several regional LTL companies have formed alliances with other regional LTL companies under the purported purpose of offering nationwide services. In reality, however, these alliances include many more companies than would be required to offer such services. The amount of cooperation within the trucking industry is higher than in similar industries, and has essentially created a level of trust within the industry that has facilitated Defendants' collusion.

47. The LTL industry has also become increasingly concentrated. For example, in 2003, Defendant YRC, then operating under the names Yellow Freight System and Yellow Transportation, merged with Roadway, one of the then largest LTL companies. The combined Yellow/Roadway entity subsequently merged in 2005 with USF, another major LTL company, further increasing LTL market concentration.

48. Defendants are able to match each others' prices by publishing their prices, and frequently using identical pricing software.

49. When discussing mergers among Defendants and sales of assets from one Defendant to another, Defendants have exchanged non-public competitively sensitive financial information, which occasionally allows them to audit and gauge their co-conspirators' compliance in imposing supra-competitive fuel surcharges. Moreover, as noted below, each Defendant lists its fuel surcharges on its website, thus enabling effective monitoring of each Defendant's compliance with the wrongful agreement alleged in this Complaint.

11

B. **Fuel Costs**

50. Fuel cost is the single substantial variable cost Defendants must cover that is subject to wide variation in price. When a company's variable costs increase, without an offsetting increase in demand, the profits of the company will decrease as the company can only pass on a portion of the cost increase to its customers.

51. Beginning in 2003, Defendants faced increased fuel costs and the likelihood of lower profits. As a result, Defendants collusively imposed on their customers what they claimed to be fuel surcharges. In reality, however, these fuel surcharges bear little relation to the actual increase in Defendants' fuel costs. Higher fuel costs merely provided an opportunity and impetus for Defendants to agree amongst themselves to impose collusive fuel surcharges.

52. Moreover, these fuel surcharges were not established by rate-setting organizations, and are beyond the scope of any former limited antitrust immunity enjoyed by Defendants.

53. Specifically, Defendants agreed to impose identical or nearly identical fuel surcharges by agreeing to tie the fuel surcharges to an index of diesel fuel prices published to the public by the United States Department of Energy ("Fuel Index"). In order to communicate movement pricing and to police the cartel, each of Defendants lists its fuel surcharges on their websites. As a result, Defendants' fuel surcharges move in lockstep, as illustrated in the following chart showing the fuel surcharges of each Defendant at different Fuel Index levels:

| Diesel Fuel $/gallon | ABF | AE | CW | FedEx Freight | Jevic | ODFL | RLC | Saia | UPS | YRC |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.80 | 8.9% | 8.9% | 9.0% | 8.9% | 8.9% | 8.5% | 8.9% | 8.9% | 8.9% | 8.9% |
| 2.00 | 10.9% | 10.8% | 10.9% | 10.9% | 10.9% | 10.5% | 10.9% | 10.9% | 10.9% | 10.9% |
| 2.20 | 12.9% | 12.9% | 12.9% | 12.9% | 13.0% | 12.5% | 12.9% | 12.9% | 12.9% | 12.9% |
| 2.40 | 14.9% | 14.9% | 14.9% | 14.9% | 15.0% | 14.5% | 14.9% | 14.9% | 14.9% | 14.9% |
| 2.60 | 16.9% | 16.9% | 16.9% | 16.9% | 17.0% | 16.5% | 16.9% | 16.9% | 16.9% | 16.9% |

12

| Diesel Fuel $/gallon | ABF | AE | CW | FedEx Freight | Jevic | ODFL | RLC | Saia | UPS | YRC |
|---|---|---|---|---|---|---|---|---|---|---|
| 2.80 | 18.9% | 18.9% | 18.9% | 18.9% | 19.0% | 18.5% | 18.9% | 18.9% | 18.9% | 18.9% |
| 3.00 | 20.9% | 20.9% | 20.9% | 20.9% | 21.0% | 20.5% | 20.9% | 20.9% | 20.9% | 20.9% |
| 3.20 | 22.9% | 22.9% | 22.9% | 21.9% | 23.0% | 22.5% | 21.9% | 22.9% | 22.9% | 22.9% |
| 3.40 | 24.9% | 24.9% | 24.9% | 22.9% | 25.0% | 24.5% | 22.9% | 24.9% | 24.9% | 24.9% |
| 3.60 | 26.9% | 26.9% | 26.9% | 23.9% | 27.0% | 26.5% | 23.9% | 26.9% | 26.9% | 26.9% |

54. Recently, the Fuel Index was near $3.00. At that price, Defendants respectively charged fuel surcharges of 20.5%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, and 21.0%.

55. The amount of the fuel surcharge imposed by the LTL companies on shipping orders exceeds the entire cost of fuel for delivering the freight of most customers, and vastly exceeds Defendants' increased fuel costs since the fuel surcharge was implemented.

56. Observers of the LTL industry, and even some Defendants, have noted the direct relationship between high fuel prices and high LTL profits. For example:

    a. A 2006 article in *Traffic World*, a weekly trade publication covering the transportation and logistics industry, quoted Ken Hazen, president of transportation software and freight payment firm CTSI, as describing fuel surcharges as "'a profit center now . . . Carriers are in control. They're in the catbird seat.'"

    b. A 2005 article in *Fleet Owner*, a trade magazine for executives and managers of commercial trucking fleets, noted that in the past, increased fuel prices were harmful to the LTL industry, but had become profitable during the recent period of increased prices: "High diesel fuel prices usually signal harsh times for trucking . . . That doesn't seem to be the case this year."

    c. In its 2006 annual report, Defendant ODFL admitted that higher fuel prices increase its profitability, and lower fuel prices decrease its profitability. "A rapid and significant decrease in diesel fuel prices would likely reduce our revenue and operating income until we revised our pricing strategy to reflect these changes."

    d. Defendant YRC admitted in its 2006 annual report, "In general, under our present fuel surcharge program, we believe rising fuel costs are beneficial to us in the short term."

e. Additionally, in its 2006 annual report, Defendant ABF noted that "as diesel fuel prices decline, the fuel surcharge and associated direct diesel fuel costs also decline by different degrees. Depending upon the rates of these declines and the impact on costs in other fuel and energy related areas, operating margins could be negatively impacted."

57. A transportation industry analyst at Bear Sterns noted: "'Our sense is that generally the LTL carriers make money on fuel surcharges and that earnings for LTL providers would be hurt by sustained lower fuel costs.'"

58. The SAIA Defendants also noted that they were profiting from their fuel surcharges, not only covering their costs:

> While fuel costs increased during 2006, higher fuel surcharges have more than offset higher diesel costs.[1]

59. When referring to its LTL service, Defendant FedEx noted, "While fuel costs increased substantially in 2006, fuel surcharges more than offset the effect of higher fuel costs." Likewise, Defendant CW stated: "As fuel prices have risen, the fuel surcharge has increased Con-Way Freight's yields and revenue, and Con-Way Freight has more than recovered higher fuel costs and fuel-related increases in purchased transportation."

60. These allegations of collusion are further supported by the contact among Defendants yielding significant opportunities to conspire. For example, representatives of Defendants AE, CW, FedEx, RLC, UPS and YRC attended SMC3 conferences in 2006 and 2007, which included on its written agenda: "Industry consolidation, capacity issues and changing trade patterns . . . that have led to greater collaboration between all constituents in North America's logistics network."

---

1. ———————

[1] All citations to statements by Defendants and by companies in other industries being compared to Defendants, unless otherwise noted, come from their respective 2006 annual reports.

14

61. Representatives of Defendants also have met through such organizations as the American Trucking Association and the Motor Freight Carriers Association.

62. A fall 2005 meeting, featuring David Gorman, CEO of Defendant Jevic, included the topic of a possible government response to fuel surcharges. The meeting offered "educational sessions and networking opportunities."

63. During the Class Period, Plaintiff and Class Members directly purchased LTL services in the United States.

64. Defendants' unlawful conduct as alleged in this Complaint has had the following effects, among others:

   a. Prices charged by Defendants and their co-conspirators to Plaintiff and Class Members for LTL services were maintained at artificially high and noncompetitive levels; and

   b. Plaintiff and Class Members paid more for LTL services than they would have paid in a competitive marketplace unregulated by Defendants' and their co-conspirators' collusive and unlawful price fixing.

65. As a direct and proximate result of Defendants' unlawful conduct as alleged in this Complaint, Plaintiff and Class Members were injured and financially damaged in their business and property, in amounts not presently determined, but in excess of the amount necessary for the jurisdiction of this Court.

### INJUNCTIVE RELIEF

66. Defendants' scheme to enter into an unlawful combination or conspiracy and reduce or eliminate competition creates an ongoing problem and violation of the antitrust laws that will continue to cause Plaintiff and Class Members economic losses, as well as hamper competition in the relevant market.

67. A monetary judgment in this case will only compensate Plaintiff and Class Members for injury they have suffered to date. A monetary judgment will not restore competition.

68. No individual customer of any Defendant has an adequate remedy at law to address Defendants' ongoing violation.

## COUNT 1
## Violation of 15 U.S.C. § 1

69. From at least September 2003, and continuing through the trial of this case, Defendants and their co-conspirators have combined and conspired to restrain interstate trade in violation of 15 U.S.C. § 1.

70. In furtherance of their unlawful combination and conspiracy, each of the Defendants and their co-conspirators have committed overt acts, including, *inter alia*:

   a. Agreeing to charge prices at certain levels and to otherwise fix, increase, maintain, and/or stabilize the prices of fuel surcharges of LTL services sold in the United States;

   b. Communicating with co-conspirators regarding the levels and amounts to be charged for LTL fuel surcharges;

   c. Meeting with co-conspirators in order to keep the existence of the conspiracy unknown and foster the illegal anti-competitive conduct described in this Complaint; and

   d. Abstaining from competition by refusing to offer fuel surcharges and LTL services at prices below the agreed upon fixed price.

71. Defendants and their co-conspirators engaged in the activities alleged in this Complaint for the purpose of effectuating unlawful arrangements to fix, maintain, raise, and/or stabilize the prices of fuel surcharges on LTL services.

72. Defendants' anti-competitive agreement was implemented by, among other things, instituting surcharges as described in this Complaint. These coordinated price increases continued on a regular basis, through the present, with the actual and intended result that Plaintiff and Class Members pay supra-competitive prices for fuel surcharges on LTL services. In public statements and other statements available to Plaintiff and members of the Class, Defendants falsely attributed these price increases to the cost of fuel, when in fact the amounts of their surcharges exceed and often far exceed Defendants' cost of fuel. As a direct and proximate result of the fuel surcharges on the LTL price fixing conspiracy, Defendants have restrained competition in the LTL market. This competitive restraint has injured Plaintiff and Class Members in their business and property by forcing them to pay a higher price for fuel surcharges on LTL services than they would have paid absent the unlawful conduct alleged herein. The conduct of Defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that:

A. The Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, and that Plaintiff is an adequate representative of the Class.

B. The Court adjudge the combination or conspiracy alleged in this Complaint by Defendants and their co-conspirators, and the acts done in furtherance thereof, to have been in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

C. The Court enter judgment for Plaintiff and the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D. The Court permanently enjoin and restrain Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from in any manner:

   a. Continuing, maintaining, or renewing the combination or conspiracy alleged in this Complaint, engaging in any other combination or conspiracy having a similar purpose or effect, and adopting or following any practice, plan, program, or device having a similar effect or purpose; and

   b. Communicating or causing to be communicated to any other person engaged in the distribution or sale of any LTL product except to the extent necessary in connection with a bona fide sales transaction between the parties to such communications.

E. The Court award Plaintiff and Class Members such other relief as the case may require and the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint.

Dated: September 6, 2007    Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By:  s/ Lisa J. Rodriguez
     Lisa J. Rodriguez
     8 Kings Highway West
     Haddonfield, NJ 08033
     Telephone: 856-795-9002
     Facsimile: 856-795-9887

W. Joseph Bruckner
Richard A. Lockridge
Robert K. Shelquist
Sarah M. Russell
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile: 612-339-0981

Steven A. Asher
Mindee J. Reuben
WEINSTEIN KITCHENOFF & ASHER, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: 215-545-7200
Facsimile: 215-545-6535

Daniel E. Gustafson
Karla M. Gluek
Renae D. Steiner
GUSTAFSON GLUEK PLLC
650 Northstar East
608 2nd Avenue South
Minneapolis, MN 55402
Telephone: 612-333-8844
Facsimile: 612-339-6622

Nicholas J. Drakulich
JENNINGS & DRAKULICH LLP
2002 Jimmy Durante, #400
Del Mar, CA 92014
Telephone: 858-755-5887
Facsimile: 858-755-6456

**COUNSEL FOR PLAINTIFF**